IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ROBERT H.,[1]

      **Plaintiff,**

  v.

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

Civil Action 2:22-cv-1228
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

### REPORT AND RECOMMENDATION

Plaintiff, Robert H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), and the administrative record (ECF No. 8). Plaintiff did not file a Reply. The Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.  BACKGROUND

Plaintiff protectively filed his application for benefits on June 7, 2017, alleging that he has been disabled since December 31, 2015, due to pain in his back and side, and gout. (R. at

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

168-74, 199.) Plaintiff's application was denied initially in September 2017 and upon reconsideration in December 2017. (R. at 81-108.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 109-24.) ALJ Jeffrey Hartranft held a telephone hearing on July 31, 2019, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 33-58.) A vocational expert ("VE") also appeared and testified. (*Id.*) On August 14, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-32.) On November 23, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 5-10.) Following a lengthy extension of time, Plaintiff filed his Complaint with this Court. (ECF No. 1.)

## II.     RELEVANT RECORD EVIDENCE

### A. Relevant Hearing Testimony and Statements

The ALJ summarized Plaintiff's relevant hearing testimony and statements to the agency as follows:

> [Plaintiff] reported that the conditions that limit his ability to work included pain in his back and side and gout (Ex. 1E/2). During the hearing, he testified that he was unable to work, during that period at issue, due to back problems, gout and a heel spur (Hearing Testimony). However, the record documents that [Plaintiff] is a capable of performing activities of daily living, as he reported that he prepares meals, drives short distances, does household chores including helping his wife with the laundry, does repairs, cuts grass, visits family members and friends, shops in stores and by computer for food, clothing and necessities, socializes with others by telephone and in person, can pay bills and handle his finances with the help of his wife and son, can follow written instructions sometimes, can follow oral instructions, but it takes a while, and has an average ability to handle stress and changes in routine (Ex. 10E).

(R. at 23.)

**B.     Relevant Medical Records**

The ALJ summarized the relevant medical records as follows:

> [T]he record, in most instances, documents generally normal musculoskeletal examinations, normal range of motion and strength in the lower extremities, a gait within normal limits, and ambulation without assistance (Exs. 2F/30, 34, 35, 39, 48 & 3F/33, 34, 38-39, 40, 48-49). Moreover, the record fails to document that [Plaintiff] was prescribed or used an ambulatory aid, during the period from his alleged onset date of December 31, 2015 through his date last insured of December 31, 2016. ***
>
> During the period from his alleged onset date of December 31, 2015 through his date last insured of December 31, 2016, the evidence of record documents that [Plaintiff] was assessed with body mass index (BMI) findings in excess of 30, consistent with a diagnosis of obesity (See Exs. 2F/29, 33, 37, 41).

(R. at 22.)

> *** The record documents [Plaintiff]'s diagnoses of degenerative disc disease of the lumbar spine and degenerative joint disease of the lumbar spine (Exs. 2F/5, 39 & 3F/44). Further, the record documents that [Plaintiff] has been regularly assessed with a BMI of greater than 30, consistent with a diagnosis of obesity (See Exs. 2F/29, 33, 37, 41).
>
> Additionally, during the period at issue, the record documents healthcare visits, including treating physician visits and emergency department (ED) care, for various complaints, particularly lower back or right-sided flank pain, but [Plaintiff] was in no distress or no acute distress on exams, which generally revealed substantially unremarkable and/or normal findings, including denials of joint pain, joint swelling, muscle cramps and muscle weakness, except for intermittent, relatively mild or minimal clinical findings and infrequent findings of back tenderness and range of motion (ROM) limited by pain (Exs. 2F/30, 34, 35, 37, 39, 48 & 3F/32, 38-39, 48-49). Notably, the record documents episodic and intermittent exacerbations of [Plaintiff]'s lower back pain. Specifically, during the period at issue, the evidence establishes that [Plaintiff] sought treatment for back pain after engaging in strenuous physical activities, including engaging in lawn work, changing a tire, performing "a lot of mowing and twisting" and heavy lifting (Exs. 2F/ 33, 38, 47 & 3F/48).

3

> Further, the objective test results and clinical findings in the record support the above-stated light RFC. Specifically, on June 23, 2016, [Plaintiff] sought emergency treatment with complaints of lower back pain that radiated into his left hip and down his left leg (Ex. 3F/47). An x-ray examination of [Plaintiff]'s lumbar spine indicated degenerative disc disease and degenerative joint disease at L3-4, L4-5 and L5-S1 (Ex. 2F/5). However, his physical examination was generally normal, with the exception of left-sided hip tenderness, and he was noted as ambulatory with a steady gait when he arrived for emergency treatment (Ex. 3F/48-49). On the same date, despite [Plaintiff]'s complaints of pain radiating down his left hip and leg, an x-ray examination of his left hip was normal (Ex. 4F/12).
>
> On July 8, 2016, he complained of left-sided back pain that caused sleep disturbances (Ex. 2F/ 33). However, while a physical examination performed on this date revealed a stiff ROM in [Plaintiff]'s back with some mild discomfort, straight leg raises were negative and normal ROM and strength in his bilateral lower extremities were noted (Ex. 2F/35). Additionally, although [Plaintiff] was noted to have a right-sided antalgic gait, during a musculoskeletal examination, performed on July 29, 2016, the examination noted normal alignment of the spine, ribs and pelvis and normal ROM in his bilateral upper extremities (Ex. 2F/30).

(R. at 24.)

**III.     ADMINISTRATIVE DECISION**

On August 14, 2019, the ALJ issued his decision. (R. at 16-32.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2016. (R. at 21.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 31, 2015 through his date last insured of December 31, 2016. (*Id.*) The ALJ found that through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the lumbar spine and obesity. (*Id.*) The ALJ further found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] find[s] that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally stoop.

(R. at 23.)

At step four of the sequential process, the ALJ determined that through the date last insured, Plaintiff was capable of performing his past relevant work as an assembly machine operator and as a welding machine operator. This work did not require the performance of work-related activities precluded by his RFC. (R. at 26.) The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 31, 2015, the alleged onset date, through December 31, 2016, the date last insured. (R. at 27.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices ;' on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.   ANALYSIS

Plaintiff raises one contention of error: the ALJ failed to consider the exertional limitations set forth in the physical capacity evaluation completed by Katrina Timson, M.D., Plaintiff's primary care physician. (ECF No. 9 at PageID 724-26.) The Commissioner asserts that Dr. Timson's medical opinion is confined to the time period after Plaintiff's date last insured and therefore was properly rejected by the ALJ. (ECF No. 10 at 4.) The Undersigned agrees with the Commissioner and finds that the ALJ's decision is supported by substantial evidence.

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] imitations." 20 C.F.R. § 404.1545(a)(1) (2012). An ALJ must assess a

claimant's RFC based on all the relevant evidence in a claimant's case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4).

"Medical opinion" and "prior administrative medical finding" are defined as follows:

(2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .

>(A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

>(B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

>(C) Your ability to perform other demands of work, such as seeing,

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

>> hearing, or using other senses; and
>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .
>
> * * *
>
>> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>
>> (ii) The existence and severity of your symptoms;
>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
>
>> (v) . . . your residual functional capacity;
>
>> (vi) Whether your impairment(s) meets the duration requirement; and
>
>> (vii) How failure to follow prescribed treatment (see § 416.930) and drug addiction and alcoholism (see § 416.935) relate to your claim.

20 C.F.R. §§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior administrative findings using five factors: supportability, consistency,

relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or her

>   medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
>   (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

>   The ALJ had this to say about Dr. Timson's opinion:
>
>   First, I acknowledge that the record contains a July 16, 2019 treating source statement from Dr. Katrina Timson, [Plaintiff]'s primary physician (Ex. 15F). However, I did not determine the persuasiveness of said statement, as the form was completed more than 2 years after the claimant's date last insured (DLI), December 31, 2016, and Dr. Timson related her opined limitations back to January of 2017, again after the DLI. Additionally, I note that the opined limitations are internally inconsistent and inconsistent with the treatment notes from the period at issue, December 31, 2015, the alleged onset date, through December 31, 2016, the date last insured.

(R. at 26.)

After review, the Undersigned concludes that the ALJ's decision reflects the proper consideration of Dr. Timson's medical opinion. First, as the ALJ noted, Dr. Timson's opinion

11

was rendered on July 16, 2019, more than two years after Plaintiff's date last insured. (R. at 26, 663-664.) The Sixth Circuit has consistently held that an ALJ may discount a treating source's opinion on the basis that "the opinion was provided after the date last insured." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (citing cases). This is particularly true here because, as the ALJ also observed, Dr. Timson specifically confined her opined limitations to post-date the relevant time period.[4] (R. at 664.) Nevertheless, the ALJ evaluated Dr. Timson's opinion for consistency. In doing so, he found it to be both "internally inconsistent and inconsistent with the treatment notes from the period at issue, December 31, 2015, the alleged onset date, through December 31, 2016, the date last insured." (R. at 26.) Substantial evidence supports the ALJ's consideration of Dr. Timson's opinion.

Significantly, Dr. Timson was Plaintiff's primary care provider for some time prior to his date last insured, having first undertaken his care at least as early as March 2014. (*See, e.g.*, R. at 304-307; 310; 312; 317, 330; 338; 352; 364-371; 421; 436; 446; 471-475; 500-513.) In her July 2019 opinion, Dr. Timson diagnosed Plaintiff with degenerative disc disease of the lumbosacral spine but did not offer any opinion as to exertional limitations on his ability to lift or carry. (R. at 663.) Further, she found that, in an eight-hour day, Plaintiff had no limitations on his ability to sit or walk but that he was limited to standing for less than two hours. Despite finding no limitations on Plaintiff's ability to sit or walk, she further indicated that Plaintiff would need to change his position "at will" on an hourly basis. (*Id*.) Dr. Timson also found that Plaintiff could twist or crouch occasionally, could climb ladders and stairs frequently, and could never stoop or

---

[4]To confirm, the relevant time period is from Plaintiff's alleged onset date of December 31, 2015, through his date last insured, December 31, 2016.

bend. (*Id.*)  With respect to physical functions, Dr. Timson found that Plaintiff frequently could handle, finger and feel and occasionally could reach and push/pull.  (R. at 664.)  Finally, with respect to environmental restrictions, Dr. Timson opined that Plaintiff would need to avoid concentrated exposure to extreme heat and cold, wetness, humidity, noise, vibration, fumes, odors, and dust, and hazards including heights.  (*Id.*)  As support for her opined limitations, she cited, but did not identify with any specificity, an x-ray of Plaintiff's lumbosacral spine.  (R. at 663-664.)

The crux of Plaintiff's argument is that the ALJ was obligated to determine the persuasiveness of Dr. Timson's untimely opinion despite having concluded that it was irrelevant.  Plaintiff's argument is without merit.  Nothing in Dr. Timson's opinion indicates that it related back to the time period at issue.  In fact, it explicitly indicates just the opposite.  And, it does so not once, but twice.  (R. at 664 "has not been able to work since 1/2017;" "The above capacities and limitations have applied to this individual since 1/2017 (date).")  Accordingly, the ALJ was not required to consider Dr. Timson' opinion at all.  *Lane v. Comm'r of Soc. Sec.*, No. 3:20-CV-1105, 2021 WL 8342836, at *11 (N.D. Ohio May 24, 2021) (citing *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) ("Post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date.")); *Emard*, 953 F.3d at 850-51) (an ALJ is required to consider a medical opinion issued after the date last insured only to the extent that the limitations provided therein relate back to the period predating the last-insured date).

As would be expected, Plaintiff attempts to relate back the limitations described by Dr. Timson.  First, Plaintiff identifies an x-ray report dated June 23, 2016, and suggests that this report, indicating degenerative disc disease, was the basis for Dr. Timson's opinion.  (ECF No. 9 at 16.)  Assuming this to be true, however, the diagnosis of an impairment, however, does not indicate the severity of a condition or its limitations.  *Lee v. Comm'r*, 529 F. App'x 706, 713 (6th Cir. 2013) ("The mere diagnosis of [an impairment] . . . says nothing about the severity of the condition."); *see also Denham v. Comm'r of Soc. Sec.*, No. 1:14-cv-611, 2015 WL 5471435, at *11 (S.D. Ohio Sept. 18, 2015) (disability is determined by the functional limitations a condition imposes, not the mere diagnosis of a condition).

Plaintiff also argues that there is no indication in the record of any exacerbations between 2016 and January 2017 such that the limitations Dr. Timson found to exist as of January 1, 2017, also would have existed in 2016, prior to his date last insured.  Dr. Timson's chosen confinement of the applicable date, however, is fatal to both aspects of Plaintiff's relation back argument.  Indeed, it is all the more so given that Dr. Timson was Plaintiff's primary care physician throughout the time period at issue.  Thus, Plaintiff is left with nothing more than conjecture to support his argument that "a distinction between [between 12/31/16 and 1/2017] is not supported by substantial evidence."  (ECF No. 9 at 16.)

Plaintiff's reliance on conjecture is further confirmed by his failure to cite any other record evidence beyond Dr. Timson's physical capacity evaluation to support his theory that no distinction can exist.  At most, Plaintiff reiterates his treatment history for various physical complaints – notably from both during and after the relevant time period.  The ALJ, however,

14

provided his own detailed discussion of Plaintiff's medical history limited to the relevant time period and Plaintiff does not challenge this recitation. (R. at 24-25.) For example, the ALJ acknowledged Plaintiff's documented healthcare visits for complaints of lower back or right-sided flank pain. (R. at 25.) At the same time, the ALJ noted that Plaintiff was reported as "in no distress or no acute distress" on exams and that these exams "generally revealed substantially unremarkable and/or normal findings" "except for intermittent, relatively mild or minimal clinical findings and infrequent findings of back tenderness and range of motion (ROM) limited by pain." (*Id.*) The ALJ remarked that, during the relevant time period, Plaintiff "sought treatment for back pain after engaging in strenuous physical activities." (*Id.*) The ALJ summarized Plaintiff's relevant treatment history as one "of conservative care with medications" and one without "recurring emergency treatment, the necessity for surgical intervention or inpatient hospitalizations." (*Id.*) The ALJ also reasonably considered Plaintiff's documented activities of daily living including Plaintiff's ability to prepare meals, drive short distances, perform household chores, socialize, shop and handle his finances. (R. at 23.) In short, the ALJ appropriately acknowledged Plaintiff's symptoms and supported his non-disability finding with substantial evidence from the record.

Finally, Plaintiff argues that the ALJ's failure to incorporate the proposed limitations was not harmless error because they would support a finding of disability under the Medical-Vocational Guidelines (the "grid"). Alternatively, Plaintiff argues that, even if he were not found disabled under the "grid," the ALJ would need to determine Plaintiff's ability to perform other work in the national economy. (ECF NO. 9 at 16.) Plaintiff's harmless error argument is

not well taken. First, it appears to assume that the ALJ would have found Dr. Timson's opinion persuasive in its entirety. This simply is more speculation. Further, even if the ALJ had made a persuasiveness determination, it is well settled that an ALJ is not required to "adopt every facet of a particular medical opinion in formulating an RFC, as long as the record as a whole supported the RFC actually determined by the ALJ, and [he] adequately explains [his] analysis in a manner sufficient to allow review." *Kincaid v. Comm'r of Soc. Sec.*, No. 1:16-CV-736, 2017 WL 9515966, at *3 (S.D. Ohio June 12, 2017), *report and recommendation adopted*, No. 1:16CV736, 2017 WL 4334194 (S.D. Ohio Sept. 30, 2017). As set forth above, the Undersigned concludes that is precisely what the ALJ did here.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: September 15, 2022

/s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge